IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JEFFREY J. BIGGS,           No. CIV S-04-2667-MCE-CMK-P

    Petitioner,

  vs.           FINDINGS AND RECOMMENDATIONS

EDDIE YLST, Acting Warden,

    Respondent.

_____/

Petitioner, a state prisoner proceeding pro se, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging the fourth denial of parole in 2004. Pending before the court is petitioner's amended petition for a writ of habeas corpus (Doc. 24), filed on March 6, 2006, respondent's answer (Doc. 38), filed on February 16, 2007, and petitioner's pro se traverse (Doc. 39), filed on March 6, 2007.

/ / /

/ / /

/ / /

/ / /

/ / /

1

# I. BACKGROUND

The following statement of facts is taken from the Ninth Circuit's decision in Biggs v. Terhune, 334 F.3d 910 (9th Cir. 2003), rejecting petitioner's challenge to the first denial of parole in 1999:

> Biggs is currently serving a sentence of twenty-five years to life in prison with the possibility of parole following his 1985 conviction on charges of first-degree murder. The conviction stemmed from Biggs' involvement in the 1981 murder of David Roberts.
>
> Biggs worked for a company that trafficked in stolen computer parts. One of Biggs' employers was arrested and charged with grand theft in connection with approximately $3 million in computer parts. David Roberts was to serve as a witness in that trial. Biggs was asked to kill Roberts; a request he refused, but he agreed to be involved in the ruse to murder him. Biggs was present at the location during the murder, paid money to the co-conspirators, and returned with the killer in an attempt to better conceal the body.
>
> In March 1982, Biggs was convicted for attempting to receive stolen computer parts. He was granted two years' probation and four months in jail.
>
> In July 1984, Biggs was arrested for the murder of David Roberts. On February 2, 1985, he was convicted of violating California Penal Code 187, murder in the first degree, and was subsequently sentenced to twenty-five years to life in prison.
>
> Throughout his period of incarceration, Biggs has been a model inmate. In 1986, he received his sole disciplinary violation for failing to follow instructions. Other than that violation, the record is replete with the gains Biggs has made. His work supervisors have consistently lauded his skills and efforts. Biggs has completed advanced college degrees and vocational training, earning an A.A. degree from Delta College, became certified by the FAA in two aviation programs, earned a Bachelor's degree in business administration, and then his Masters in Business Administration.
>
> On March 23, 1999, Biggs was considered for parole by the Board [of Prison Terms]. Biggs waived his right to an attorney and made an extensive written submission. The written submission included in detail Biggs' activities while in jail. The Board found him unsuitable for parole and denied him reconsideration for two years. The Board based its denial on the following findings:
>
> > 1.  That extra weight could be assigned to petitioner's commitment offense on the grounds that petitioner took part in murdering a witness;

2. That petitioner was unsuitable for parole because of the manner in which the murder was carried out;

3. That petitioner failed to profit from society's previous attempts to correct his criminal behavior;

4. That petitioner had an escalating pattern of criminal conduct;

5. That petitioner needs therapy to deal with stress in a non-destructive manner;

6. That petitioner's gains in behavior are recent and need to be maintained;

7. That petitioner lacks remorse because he did not turn himself in;

8. That petitioner cannot expect to work his way out of prison;

9. That petitioner should not have included mitigating factors and did not appear sincere; and

10. That the last word in petitioner's sentence is "LIFE" and that he shouldn't expect to work his way out of prison.

In April 2004, petitioner appeared before the Board of Prison Terms ("Board") for his fourth parole suitability hearing.[1]  Petitioner was put in waist chains and cuffs prior to entering the hearing room.  Again, the Board denied parole, offering the following reasons:

> . . . The paramount reasoning would be the timing and the gravity of the committing offense.  The offense was carried out in a vicious and brutal manner.  This was the execution style murder of David Henry Roberts. . . .  The victim was set up by your crime partners and you.  He was viciously murdered, beaten, stabbed.  He was taken to a remote area where the victim lost his life.  And on top of that, subsequently you returned to the scene where the victim was, body was, and helped in the process of burying and covering up this event in hopes that it would not show itself, would not surface.  The motive for the crime was inexplicable and trivial in relationship to the offense.  It's about greed. . . .  The offense was carried out . . . in a dispassionate and calculated manner, an execution style murder, as he was led to his death unknowingly, believing that he was going to be taken to an airport to be led away so he could run and

---

[1] The Board called it a "subsequent parole consideration hearing number three." Given the state court's reference to "his three previous parole hearings," the court concludes that the denial challenged in this petition was the fourth.

> hide further. . . . Previous record, the prisoner had an escalating pattern of conduct with two different crimes of particularly receiving stolen properties, a history of unstable and tumultuous relationships with others, coming from a dysfunctional family setting, and dropping out of school.

The Board also commented on petitioner's history while in prison: "[T]he prisoner has not sufficiently participated in beneficial self-help and programming at this time." The Board noted that petitioner's psychological report was "adequate" and that he had sufficient plans for release.

The Board also noted several positive aspects of petitioner's case:

> . . . Other information bearing on suitability would be the prisoner's counselor wrote that the prisoner would pose a low degree of threat if released to the public at this time. Remarks, the Panel makes the following findings or remarks, that the prisoner should be commended. He's an exceptional inmate, positive performance, only one [rules violation] in 1986 for disobeying an order. No 128s. He's been disciplinary-free. He been in AA since 2000. He's participated in the Living Gospel according [to] Paul, positive work reports. . . . He has several marketable skills, airframe, air engine, mechanic, has the licensure for those, certificates from FEMA, positive multiple certifications . . . .

The Board noted that petitioner has AA, BA, and MA degrees.

Petitioner filed a habeas corpus petition in the California Superior Court challenging, among other things, the denial of parole and his having been placed in chains at the parole hearing.[2] The state court denied the petition in a reasoned decision. The California Court of Appeal denied relief without comment or citation and the California Supreme Court denied review, also without comment or citation.

## II. STANDARDS OF REVIEW

Because this action was filed after April 26, 1996, the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") are presumptively applicable. See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Calderon v. United States Dist. Ct.

---

[2] The state court denied other claims as successive.

(Beeler), 128 F.3d 1283, 1287 (9th Cir. 1997), cert. denied, 522 U.S. 1099 (1998). The AEDPA does not, however, apply in all circumstances. When it is clear that a state court has not reached the merits of a petitioner's claim, because it was not raised in state court or because the court denied it on procedural grounds, the AEDPA deference scheme does not apply and a federal habeas court must review the claim de novo. See Pirtle v. Morgan, 313 F.3d 1160 (9th Cir. 2002) (holding that the AEDPA did not apply where Washington Supreme Court refused to reach petitioner's claim under its "relitigation rule"); see also Killian v. Poole, 282 F.3d 1204, 1208 (9th Cir. 2002) (holding that, where state court denied petitioner an evidentiary hearing on perjury claim, AEDPA did not apply because evidence of the perjury was adduced only at the evidentiary hearing in federal court); Appel v. Horn, 250 F.3d 203, 210 (3d Cir.2001) (reviewing petition de novo where state court had issued a ruling on the merits of a related claim, but not the claim alleged by petitioner). When the state court does not reach the merits of a claim, "concerns about comity and federalism . . . do not exist." Pirtle, 313 F. 3d at 1167.

Where the AEDPA is applicable, federal habeas relief under 28 U.S.C. § 2254(d) is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); see also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v. Taylor, 529 U.S. 362 (2000); Lockhart v. Terhune, 250 F. 3d 1223, 1229 (9th Cir. 2001).

Under § 2254(d), federal habeas relief is available where the state court's decision is "contrary to" or represents an "unreasonable application of" clearly established law. In Williams v. Taylor, 529 U.S. 362 (2000) (O'Connor, J., concurring, garnering a majority of the Court), the United States Supreme Court explained these different standards. A state court

5

decision is "contrary to" Supreme Court precedent if it is opposite to that reached by the Supreme Court on the same question of law, or if the state court decides the case differently than the Supreme Court has on a set of materially indistinguishable facts. See id. at 405. A state court decision is also "contrary to" established law if it applies a rule which contradicts the governing law set forth in Supreme Court cases. See id. In sum, the petitioner must demonstrate that Supreme Court precedent requires a contrary outcome because the state court applied the wrong legal rules. Thus, a state court decision applying the correct legal rule from Supreme Court cases to the facts of a particular case is not reviewed under the "contrary to" standard. See id. at 406. If a state court decision is "contrary to" clearly established law, it is reviewed to determine first whether it resulted in constitutional error. See Benn v. Lambert, 293 F.3d 1040, 1052 n.6 (9th Cir. 2002). If so, the next question is whether such error was structural, in which case federal habeas relief is warranted. See id. If the error was not structural, the final question is whether the error had a substantial and injurious effect on the verdict, or was harmless. See id.

State court decisions are reviewed under the far more deferential "unreasonable application of" standard where it identifies the correct legal rule from Supreme Court cases, but unreasonably applies the rule to the facts of a particular case. See id.; see also Wiggins v. Smith, 123 S.Ct. 252 (2003). While declining to rule on the issue, the Supreme Court in Williams, suggested that federal habeas relief may be available under this standard where the state court either unreasonably extends a legal principle to a new context where it should not apply, or unreasonably refuses to extend that principle to a new context where it should apply. See Williams, 529 U.S. at 408-09. The Supreme Court has, however, made it clear that a state court decision is not an "unreasonable application of" controlling law simply because it is an erroneous or incorrect application of federal law. See id. at 410; see also Lockyer v. Andrade, 123 S.Ct. 1166, 1175 (2003). An "unreasonable application of" controlling law cannot necessarily be found even where the federal habeas court concludes that the state court decision is clearly erroneous. See Lockyer, 123 S.Ct. at 1175. This is because ". . . the gloss of clear

6

error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness." <u>Id.</u>  As with state court decisions which are "contrary to" established federal law, where a state court decision is an "unreasonable application of" controlling law, federal habeas relief is nonetheless unavailable if the error was non-structural and harmless.  See <u>Benn</u>, 283 F.3d at 1052 n.6.

The "unreasonable application of" standard also applies where the state court denies a claim without providing any reasoning whatsoever.  See <u>Himes v. Thompson</u>, 336 F.3d 848, 853 (9th Cir. 2003); <u>Delgado v. Lewis</u>, 233 F.3d 976, 982 (9th Cir. 2000).   Such decisions are considered adjudications on the merits and are, therefore, entitled to deference under the AEDPA.  See <u>Green v. Lambert</u>, 288 F.3d 1081 1089 (9th Cir. 2002); <u>Delgado</u>, 233 F.3d at 982.  The federal habeas court assumes that state court applied the correct law and analyzes whether the state court's summary denial was based on an objectively unreasonable application of that law.  See <u>Himes</u>, 336 F.3d at 853; <u>Delgado</u>, 233 F.3d at 982.

### III. DISCUSSION

Pursuant to the court's November 20, 2006, order granting respondent's motion to dismiss, two claims remain: (1) the decision denying parole was not based on sufficient evidence and violated due process; and (2) petitioner was improperly placed in chains at the parole hearing.  All other claims presented in the amended petition were dismissed as procedurally barred.

**A.    Denial of Parole**

In his amended petition, petitioner claims:

> The Board failed to conduct the hearing in a fair and impartial manner required by law, rules, policies, procedures, and spirit of the process demanding that the Panel determine my suitability under [California law]. The Panel is required to set a parole date unless a current danger to the public exists.  The Panel has not proven its case as required.

/ / /

Petitioner adds

> . . . The Panel continues to rely on the "Some Evidence" Doctrine (the fact that I have a past and a crime was committed over twenty years ago) as a basis for it's denial, in an attempt to legitimize their failure to conduct a parole consideration hearing according to the law so that they can continue to uphold the Governor's "No Parole Policy" relating to those convicted of murder.

Petitioner asserts that the continued denial of parole based on unchanging facts essentially re-sentences him to life without the possibility of parole. Petitioner argues that the Board's decision is not based on any evidence that, at the time of the hearing, he would pose a danger to society if released. He states that "[t]he heart of this, like other parole cases, is my substantive due process rights: The right to have my parole suitability determined based on rational, non-arbitrary reasons that are supported by sufficient evidence."

Respondent answers by arguing: (1) petitioner does not have a constitutionally cognizable liberty interest in parole and, therefore, this court lacks subject matter jurisdiction; (2) even if petitioner does have a liberty interest in parole, he was provided all the process he is due because he was given notice and an opportunity to be heard; and (3) even if the "some evidence" standard is applied, the state court's decision was neither contrary to nor an unreasonable application of the law because some evidence supported the decision to deny parole.

Many of the legal questions presented by this case have recently been addressed by the Ninth Circuit in Sass v. Bd. of Prison Terms, 461 F.3d 1123 (9th Cir. 2006). In particular, the Ninth Circuit held that California's parole statute does, in fact, create a federally cognizable liberty interest. See id. at 1127-28. On the merits, the court also rejected the argument that the "some evidence" standard does not apply. See id. at 1128-29. Under Superintendent v. Hill, 472 U.S. 445, 455 (1985), due process requires a prison disciplinary hearing decision be based on "some evidence" in the record as a whole which supports the decision. This standard is not particularly stringent and is satisfied where "there is any evidence in the record that could

support the conclusion reached." Id. at 455-56. Additionally, this standard requires that the evidence underlying the Board's decision must have some indicia of reliability. See Biggs v. Terhune, 334 F.3d 910, 915 (9th Cir. 2003).

In Sass, the Ninth Circuit also addressed the argument that the requirement of "some evidence" in the parole context has not been clearly established by the Supreme Court. The Ninth Circuit held:

> Hill's some evidence standard is minimal, and assures that "the record is not so devoid of evidence that the findings of the . . . board were without support or otherwise arbitrary." (citation omitted). Hill held that although this standard might be insufficient in other circumstances, "[t]he fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact." (citation omitted). To hold that less than the some evidence standard is required would violate clearly established federal law because it would mean that a state could interfere with a liberty interest – that in parole – without support or in an otherwise arbitrary manner. We therefore reject the state's contention that the some evidence standard is not clearly established in the parole context.

Sass, 461 F.3d at 1129.

Therefore, this court has jurisdiction to review petitioner's claim and must apply the "some evidence" standard on the merits. See id.

In assessing whether the "some evidence" standard has been met, the court's analysis is framed by the state's statutes and regulations governing parole suitability. See Biggs, 334 F.3d at 915. Thus, this court looks to California law to determine the findings that are necessary to deem a prisoner unsuitable for parole and then reviews the record to determine whether there is "some evidence" supporting the decision to deny parole. Under California law, an inmate is not suitable for parole if, in the judgment of the Board, the prisoner will pose an unreasonable risk of danger to society if released. See Cal. Code Regs., tit. 15 § 2402(a). The regulations set forth various circumstances which tend to show suitability and others which tend to show unsuitability. See Cal. Code Regs., tit 15 § 2402(c)-(d). Under § 2402(c), circumstances tending to show unsuitability include: (1) the facts of the commitment offense,

where the offense was committed in an especially heinous, atrocious, or cruel manner; (2) the prisoner's previous record of violence; (3) a history of unstable relationships with others; (4) commission of sadistic sexual offenses; (5) a lengthy history of severe mental problems related to the offense; and (6) serious misconduct while in prison. Circumstances tending to show suitability include: (1) lack of a juvenile record; (2) reasonably stable relationships with others; (3) the prisoner has shown remorse; (4) lack of significant history of violent crimes; (5) realistic plans for release; and (6) participation in institutional activities indicating an enhanced ability to function within the law upon release. See Cal. Code Regs., tit. 15 § 2402(d). The denial of parole may be predicated on the commitment offense only where the Board can point to factors beyond the minimum elements of the crime that demonstrate that, at the time of the suitability hearing, the inmate will present a danger to society if released. See In re Dannenberg, 34 Cal.4th 1061, 1071 (2005).

The gravamen of petitioner's claim is that immutable factors cannot constitute evidence sufficient to deny parole and that continued reliance on such factors ignores the goal of rehabilitation and violates due process. In Biggs, where the petitioner was challenging the first denial of parole based solely on the facts of the commitment offense, the Ninth Circuit concluded that the denial was based on some evidence – the facts of the commitment offense – even though other findings made by the Board in Biggs' case lacked evidentiary support. In dicta, however, the court acknowledged that, sometime in the future, the continued reliance on immutable factors could violate due process. See Biggs, 334 F.3d at 917. From this, it is clear that the Board may rely solely on immutable factors for the first denial of parole.

As to subsequent denials of parole and the continued reliance on immutable factors, the Ninth Circuit has not drawn any bright line. In Sass, where the petitioner was challenging the third denial of parole, the Ninth Circuit affirmed the denial of the habeas petition. See Sass, 461 F.3d at 1129. The court did not conclude that reliance on immutable factors (the facts of the commitment offense and the petitioner's prior criminal history) – even

for a third time – violated due process.  See id.  The court held:

> In making a judgment call based on evidence of pre-conviction recidivism and the nature of the conviction offense, the Board cannot be categorized as acting arbitrarily.  Here, the Board based its finding that Sass was unsuitable for parole on the gravity of his convicted offenses in combination with his prior offenses.  These elements amount to some evidence. . . .  Consequently, the state court decisions upholding the denials were neither contrary to, nor did they involve an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States.

Recently, in Irons v. Carey, ___ F.3d ___ (9th Cir. 2007), the Ninth Circuit reversed the district court's grant of a habeas petition challenging the eighth denial of parole, concluding that the facts of the petitioner's commitment offense alone constituted some evidence of unsuitability under California law.  As to the due process argument, the court noted in dicta:

> Furthermore, we note that in Sass and in the case before us there was substantial evidence in the record demonstrating rehabilitation.  In both cases, the California Board of Prison Terms appeared to give little or no weight to this evidence in reaching its conclusion that Sass and Irons presently constituted a danger to society and thus were unsuitable for parole.  We hope that the Board will come to recognize that in some cases, indefinite detention based solely on an inmate's commitment offense, regardless of the extent of his rehabilitation, will at some point violate due process, given the liberty interest in parole that flows from the relevant California statutes.

Thus, reliance on immutable factors for the eighth denial of parole does not violate due process.

Here, the Board denied parole based on: (1) the facts of petitioner's commitment offense; (2) petitioner's previous criminal history; and (3) petitioner's tumultuous past.  Clearly, because petitioner cannot change what has happened in the past, these are all immutable factors.  Other than a letter from the San Mateo County District Attorney's office opposing parole, the Board did not cite to any other factors tending to show unsuitability.  In fact, the Board commented on petitioner's exemplary performance since incarceration.  Therefore, the court must address when continued reliance on immutable factors violates due process.

///

///

As discussed above, in <u>Biggs</u>, which involved petitioner's challenge to the first denial of parole based solely on the facts of his commitment offense, the Ninth Circuit concluded that due process had not been violated. In <u>Sass</u>, which involved a challenge to the third denial of parole based on both the facts of the prisoner's commitment offense and his prior criminal history, the Ninth Circuit upheld the denial of parole concluding that some evidence supported the Board's decision. Finally, in <u>Irons</u>, the Ninth Circuit held that the denial of parole based solely on the commitment offense was supported by some evidence of unsuitability under California law. Petitioner's case is analogous to <u>Sass</u> in that parole was denied for a third time based only on the commitment offense and criminal history. Therefore, as in <u>Sass</u>, this court cannot say that the state court's decision was either contrary to or resulted in an unreasonable application of federal law.

While there was certainly evidence that petitioner demonstrated exemplary behavior since incarceration, as did the petitioners in <u>Sass</u> and <u>Irons</u>, and while it is clear that the Board gave little to no weight to this evidence, it makes no difference under binding Ninth Circuit precedent. In both <u>Sass</u> and <u>Irons</u>, the court upheld continued parole denials based on immutable factors and declined to say when this practice arises to the level of a due process violation. Based on the facts in <u>Irons</u>, it seems that the Ninth Circuit sanctions reliance on immutable factors to deny parole the first eight times. Perhaps nine is the magic number where due process is violated. But, because this case involves the fourth denial, this court must conclude that due process was not violated.

The court, however, observes that the Board's apparent disregard for petitioner's conduct since being incarcerated essentially renders rehabilitation a hollow ideal. As the Ninth Circuit has repeatedly commented, at some point the failure to take a prisoner's rehabilitation into account becomes unfair. Put another way, eventually positive post-incarceration conduct will erode the reliability of the notion that the commitment offense facts are a good indicator of a prisoner's current threat to society.

### B. Use of Waist Chains and Cuffs

Petitioner states that he was placed in waist chains and cuffs during the fourth parole hearing and argues that this was unfair. The state court concluded that, because the use of restraints at parole hearings is allowed under California law, petitioner was not entitled to habeas relief. However, as respondent notes, there is no clearly established Supreme Court precedent forbidding the use of restraints in the parole context. Under current precedent, substantive due process is satisfied where some evidence supports the Board's decision. Because there is no clearly established law on this point, the state court's denial of this claim cannot be said to be contrary to or have resulted in an unreasonable application of clearly established law.

### IV. CONCLUSION

Based on the foregoing, the undersigned recommends that petitioner's amended petition for a writ of habeas corpus be denied and that the Clerk of the Court be directed to enter judgment and close this file.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 20 days after being served with these findings and recommendations, any party may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: March 14, 2007.

CRAIG M. KELLISON
UNITED STATES MAGISTRATE JUDGE